USDC SCAN INDEX SHEET

















JPP 6/16/03 14:28

3:03-CV-01178 SECURITIES V. SPITZER

*1*

*CMP.*

ORIGINAL

FILED

03 JUN 16 AM 9:36

CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

BY: DEPUTY

Debra M. Patalkis (Lead Counsel)
Lawrence A. West
Daniel H. Rubenstein
Neil J. Welch, Jr.
Nancy E. McGinley
Cory C. Kirchert
John J. Field III
Securities and Exchange Commission
450 Fifth Street, NW
Washington, D.C. 20549-0911
(202) 942-7133

Nicolas Morgan (Local Counsel) CA Bar No. 166441
Securities and Exchange Commission
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036-3648
(323) 965-3880

Attorneys for Plaintiff
Securities and Exchange Commission

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

BY FAX

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. STEVEN S. SPITZER, Defendant. | Case No. 03 CV '03 CV 1178 JEG (NLS) COMPLAINT |

Plaintiff Securities and Exchange Commission alleges:

SUMMARY

1. This case involves a massive financial fraud at Peregrine Systems, Inc., a publicly traded San Diego-based software company. The purpose of the fraud was to inflate Peregrine's revenue and stock price. Defendant Steven S. Spitzer is a former sales vice president at Peregrine who schemed with senior officers of the company and others to achieve those unlawful objectives. During the fraud, Peregrine filed materially incorrect financial statements with the

Commission for 11 consecutive quarters between April 1, 1999, and December 31, 2001. The fraud was uncovered in April 2002, and in February 2003, Peregrine restated its financial results for its fiscal years 2000 and 2001, and for the first three quarters of fiscal 2002. Peregrine reduced previously reported revenue of $1.34 billion by $509 million, of which at least $259 million was reversed because the underlying transactions lacked substance.

2. Peregrine senior management, other officers and employees and certain other individuals engaged in deceptive practices to artificially inflate the company's revenue. The heart of the fraud was the recording of millions of dollars of revenue on the basis of non-binding "parking" arrangements with customers, in violation of Generally Accepted Accounting Principles ("GAAP"). Spitzer negotiated some of the largest of Peregrine's fraudulent transactions at the urging of more senior executives. These executives, realizing that Peregrine lacked the revenue to meet the company's targets, urged Spitzer to "park" software with resellers (or purported resellers) in order to generate bogus revenue. The parking transactions were non-binding "sales" of software licenses to resellers with the understanding that they owed nothing to Peregrine unless the software was sold to an end-user. At the time, Spitzer knew that booking revenue from these parking transactions with resellers was improper.

3. While Spitzer was aware of the ongoing fraud, he sold 185,000 Peregrine shares for proceeds of approximately $5.2 million.

4. By engaging in the acts alleged in this complaint, Spitzer violated, or aided and abetted Peregrine's violations of, the antifraud, books and records, internal accounting controls, and reporting provisions of the federal securities laws, and unless enjoined by this Court, will continue to do so.

## THE DEFENDANT

5. Spitzer, age 44, was hired to be Peregrine's Vice President, Alliances, in August 1997. He became Vice President, Managed Service Providers, in April 2000. He returned to his former position in March 2001 and held that position until he left the company in June 2002. Spitzer resides in Newport Beach, California.

## THE ISSUER

6. Peregrine, a Delaware corporation with principal offices in San Diego, California, sells infrastructure management software. Its fiscal year ends March 31. From its initial public offering in April 1997 to the present, Peregrine's common stock has been registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 (Exchange Act) [15 U.S.C. § 78l(g)]. It traded on the Nasdaq National Market System from its initial public offering until August 30, 2002, when it was delisted. On September 22, 2002, Peregrine filed a voluntary petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e), 78u-1, and 78aa].

8. Venue properly lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Spitzer transacted business in this judicial district, because offers and sales of the securities at issue in this case were made in this judicial district, and because certain of the acts and transactions constituting the violations in this case occurred within this judicial district.

9. Spitzer made use of the means and instrumentalities of interstate commerce in connection with the acts alleged in this complaint.

10. The Commission requests that the Court permanently enjoin Spitzer from engaging in further violations; order an accounting; impose civil penalties upon him for participating in the accounting fraud; order him to pay disgorgement, plus prejudgment interest, and civil penalties for insider trading; order him to disgorge any other ill-gotten gains, plus prejudgment interest; and bar him from acting as an officer or director of any reporting company.

**SPITZER PARKED SOFTWARE SALES TO INFLATE PEREGRINE'S REVENUE**

11. Following its initial public offering in April 1997, Peregrine reported 17 consecutive quarters of revenue growth through the quarter ended June 30, 2001. During this period, Peregrine's publicly reported financial results met or exceeded analysts' expectations, and the company's stock price increased from $2.25 per share (split-adjusted) to a high of $79.50 per share on March 27, 2000.

12. Peregrine's apparent success in achieving revenue goals was largely illusory. During the 11-quarter fraud, Peregrine's senior management regularly held meetings near the ends of fiscal quarters to identify revenue shortfalls and discuss ways to close the gap between current and forecasted revenue. Peregrine's revenue goals were frequently achieved by a fraudulent practice known as "parking software." Such unlawful "parking" consisted of phony sales transactions arranged at or near the ends of fiscal quarters with resellers (or purported resellers). Peregrine then recognized phantom revenues from the parking transactions in order to "make the quarter." At the urging of Peregrine's most senior officers, Spitzer repeatedly negotiated parking arrangements with the knowledge that the revenue recognition scheme was unlawful.

13. Peregrine could not properly recognize revenue from a software sale unless the transaction met the GAAP criteria (in particular, American Institute of Certified Public

Accountants' (AICPA) Statement of Position (SOP) 97-2): (a) persuasive evidence of an arrangement must exist, (b) delivery must have occurred, (c) the vendor's fee must be fixed or determinable, and (d) collectibility must be probable. None of Spitzer's parking transactions, alleged herein, complied with SOP 97-2 because (1) the fees supposedly due Peregrine were neither fixed nor determinable—since the end-user sales had not been finalized at the time Peregrine recorded revenue, and (2) because collection was not probable—since Peregrine's payment depended upon completing a successful sale to an end-user. Spitzer knew, or was reckless in not knowing, that the practice was improper and would illicitly inflate Peregrine's revenue. By June 1999, Spitzer was aware that Peregrine's senior sales personnel were parking software with purported resellers. By December 1999, he became directly involved in the scheme.

## SPITZER'S "GO TO" RESELLER FOR PARKING DEALS

14. The counter-party to Spitzer's biggest parking deals was the consulting arm of a major accounting firm (hereinafter "the consulting firm"). The consulting firm signed approximately nine software license agreements for Peregrine software, purportedly worth $34.8 million. Peregrine reported revenue of approximately $34.8 million from its nine licensing agreements with the consulting firm. However, the consulting firm only paid Peregrine approximately $4.3 million for the licenses it ostensibly purchased. Unable to collect under the contracts, Peregrine eventually and, in large part improperly, wrote off approximately $30.8 million in purported receivables from the consulting firm.

15. Spitzer's unlawful dealings with the consulting firm began near the end of the December 1999 quarter, when a senior Peregrine officer informed Spitzer that Peregrine expected to close a software sale to a certain end-user in the next quarter and further, that without

the anticipated revenue, Peregrine could not meet its revenue goal for the December 1999 quarter. To close the revenue gap, the senior officer urged Spitzer to park the potential software deal with the consulting firm.

16. Spitzer told his counterpart at the consulting firm (hereinafter "the consulting firm partner") that Peregrine needed revenue to achieve its quarterly goal, and asked him to sign a licensing agreement for the Peregrine software. Spitzer orally promised the consulting firm partner that Peregrine would not require the consulting firm to pay unless end-users were found for the software, and that Peregrine would also steer the services work associated with the end-user sale to the consulting firm. The consulting firm partner signed a contract that on its face required the consulting firm to pay Peregrine $4 million for software.

17. In the December 1999 quarter, Peregrine improperly recorded more than $4 million in revenue for Spitzer's parking transaction with the consulting firm but never collected from the consulting firm under their December 1999 contract.

18. Thereafter the consulting firm became Peregrine's "go to" reseller when it needed revenue to make quarterly forecasts. In late June 2000, Peregrine sales personnel were working on a $7.1 million software sale to an end-user, but Peregrine senior officers refused to wait until the sale closed before recognizing revenue. At their urging, Spitzer arranged to park the $7.1 million software deal with the consulting firm pursuant to a similarly bogus contract and an oral side agreement.

19. In the June 2000 quarter, Peregrine improperly recorded approximately $6.1 million in revenue for Spitzer's parking transaction with the consulting firm.

20. Within days of this parking transaction, Spitzer parked an additional $2.3 million in software with the consulting firm—purportedly for resale to another end-user. Again,

Peregrine recorded revenue in the June 2000 quarter. No sale to the end-user ever occurred, and Peregrine never collected from the consulting firm.

21. Spitzer's next parking arrangement with the consulting firm was his largest. Near the close of the September 2000 quarter, a senior Peregrine officer told Spitzer that an end-user would likely buy $11.5 million of software, but that the sale would not close for several weeks. The senior officer urged Spitzer to park the anticipated sale with the consulting firm so that Peregrine could record the revenue in the September quarter. The consulting firm partner signed a contract for the consulting firm to buy $11.5 million worth of Peregrine software for resale to the end-user. Again, Spitzer and the consulting firm partner orally agreed that the consulting firm had no obligation to pay the contract amount.

22. In the September 2000 quarter, Peregrine improperly recorded approximately $11.5 million in revenue for Spitzer's parking transaction with the consulting firm. No sale to the end-user ever occurred, and Peregrine never collected from the consulting firm under the September 2000 contract.

## SPITZER PARKED SOFTWARE WITH OTHER ENTITIES

23. In 2001, Spitzer continued to park software to improperly inflate Peregrine's revenue. Near the end of March 2001, a Peregrine senior officer urged Spitzer to park software with two different entities, so that Peregrine could use the phantom revenue to meet its March 2001 quarterly revenue goal.

24. First, Spitzer convinced one of Peregrine's paid consultants (hereinafter "the Peregrine consultant") to sign a contract obligating the Peregrine consultant to pay approximately $1 million for Peregrine software for purported resale to an end-user. Spitzer orally promised the Peregrine consultant that he was not obligated to pay Peregrine. In the March 2001 quarter,

Peregrine recorded $993,000 in revenue for Spitzer's parking transaction with the Peregrine consultant. No sale to the end-user ever occurred, and Peregrine never collected from the Peregrine consultant under the March 2001 contract.

25. Second, Spitzer parked approximately $2.5 million in software with another entity for purported resale to an end-user. The reseller signed a contract that on its face obligated it to pay Peregrine for the software. However, Spitzer entered into a written side agreement with the reseller that relieved it of any payment obligation until an end-user paid for the software. In the March 2001 quarter, Peregrine recorded the $2.5 million in revenue for Spitzer's parking transaction with the reseller. More than a year later, when the fraud was exposed, $2.36 million of the $2.5 million contract remained unpaid.

## SPITZER PROFITED FROM THE FRAUD

26. Between August 12, 1999 and May 24, 2001, Spitzer sold 185,000 shares of Peregrine common stock for proceeds of approximately $5.23 million, at prices ranging between $15.75 and $52.42 per share. On May 6, 2002, after Peregrine announced that certain transactions involving revenue recognition irregularities, totaling as much as $100 million, had been called into question, the stock closed at $0.89. Peregrine declared bankruptcy on September 22, 2002, and its stock now trades in the Pink Sheets for less than $1 per share.

27. From 1999 through 2002, Peregrine paid Spitzer a base annual salary. The company also paid Spitzer commissions and bonuses totaling approximately $817,019, and awarded him incentive stock options.

## FIRST CLAIM

**Spitzer Violated Exchange Act Section 10(b) and Exchange Act Rule 10b-5**
**[Financial Fraud]**

28. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

29. Spitzer knowingly or recklessly participated in a scheme by which Peregrine materially misrepresented its publicly-reported financial results, including its revenue.

30. By reason of the foregoing, Spitzer violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5[1]].

**SECOND CLAIM**

**Spitzer Violated Securities Act Section 17(a), Exchange Act Section 10(b) and Exchange Act Rule 10b-5 [Insider Trading]**

31. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

32. Spitzer sold Peregrine stock on the basis of material nonpublic information concerning Peregrine's true financial condition, in breach of his fiduciary duty to Peregrine and its shareholders.

33. By reason of the foregoing, Spitzer violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

**THIRD CLAIM**

**Spitzer Violated Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1 and Aided and Abetted Violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [Books and Records and Internal Controls Violations]**

34. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

35. Spitzer deliberately circumvented existing internal accounting controls in order to falsify Peregrine's books and records.

36. Spitzer, directly or indirectly, falsified or caused to be falsified, books, records, or accounts described in Exchange Act Section 13(b)(2) [15 U.S.C. § 78m(b)(2)].

---

[1] 2002 ed., p. 60, promulgated 12/22/48, as amended 8/11/51.

37. Spitzer knowingly and substantially participated in a scheme to cause extensive false and misleading entries in Peregrine's books and records. By doing so, Spitzer aided and abetted Peregrine's failure to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the company's transactions and dispositions of its assets.

38. Spitzer knowingly and substantially contributed to Peregrine's failure to maintain its internal accounting controls. By doing so, Spitzer aided and abetted the company's failure to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP.

39. By reason of the foregoing, Spitzer violated Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1[2]] and aided and abetted violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

## FOURTH CLAIM

**Spitzer Aided and Abetted Violations of Exchange Act Section 13(a) and Rules 12b-20, 13a-1, and 13a-13 thereunder**
**[Reporting Violations]**

40. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

41. Spitzer knowingly and substantially participated in Peregrine's inclusion of financial statements that were not presented in conformity with GAAP in its annual, quarterly, and other reports filed with the Commission from the first quarter of fiscal year 2000 (the period ended June 30, 1999) through the third quarter of fiscal year 2002 (the period ended December 31, 2001).

---

[2] 2002 ed., p. 133, promulgated 2/23/79.

42. By reason of the foregoing, Spitzer aided and abetted violations of Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20[3], 240.13a-1[4], and 240.13a-13[5]].

## RELIEF REQUESTED

WHEREFORE, Plaintiff Securities and Exchange Commission respectfully requests that this Court:

### I.

Issue an order of permanent injunction restraining and enjoining Spitzer, and his agents, servants, employees, attorneys, and assigns, and those persons in active concert or participation with him, and each of them, from violating Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Sections 10(b) and 13(b)(5) [15 U.S.C. §§ 78j(b) and 78m(b)(5)], and Exchange Act Rules 10b-5 and 13b2-1 [17 C.F.R. §§ 240.10b-5 and 240.13b2-1], and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Exchange Act Rules 12b-20 [17 C.F.R. § 240.12b-20], 13a-1 [17 C.F.R. § 240.13a-1], and 13a-13 [17 C.F.R. § 240.13a-13].

### II.

Order an accounting by Spitzer of all money, property, and other assets directly or indirectly derived from the transactions alleged herein.

### III.

Issue an order directing Spitzer to disgorge, with prejudgment interest, all ill-gotten gains resulting from his conduct described in this complaint.

---

[3] 2002 ed., p. 112, promulgated 2/13/65.
[4] 2002 ed., p. 128, promulgated 7/24/97.
[5] 2002 ed., p. 132, promulgated 5/12/77, as amended 5/3/83, 7/9/85, 3/13/89, 3/27/92, and 6/14/96.

42. By reason of the foregoing, Spitzer aided and abetted violations of Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20[3], 240.13a-1[4], and 240.13a-13[5]].

## RELIEF REQUESTED

WHEREFORE, Plaintiff Securities and Exchange Commission respectfully requests that this Court:

### I.

Issue an order of permanent injunction restraining and enjoining Spitzer, and his agents, servants, employees, attorneys, and assigns, and those persons in active concert or participation with him, and each of them, from violating Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Sections 10(b) and 13(b)(5) [15 U.S.C. §§ 78j(b) and 78m(b)(5)], and Exchange Act Rules 10b-5 and 13b2-1 [17 C.F.R. §§ 240.10b-5 and 240.13b2-1], and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Exchange Act Rules 12b-20 [17 C.F.R. § 240.12b-20], 13a-1 [17 C.F.R. § 240.13a-1], and 13a-13 [17 C.F.R. § 240.13a-13].

### II.

Order an accounting by Spitzer of all money, property, and other assets directly or indirectly derived from the transactions alleged herein.

### III.

Issue an order directing Spitzer to disgorge, with prejudgment interest, all ill-gotten gains resulting from his conduct described in this complaint.

---

[3] 2002 ed., p. 112, promulgated 2/13/65.
[4] 2002 ed., p. 128, promulgated 7/24/97.
[5] 2002 ed., p. 132, promulgated 5/12/77, as amended 5/3/83, 7/9/85, 3/13/89, 3/27/92, and 6/14/96.

IV.

Issue an order directing Spitzer to pay civil monetary penalties under Exchange Act Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78u-1].

V.

Enter an order under Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] prohibiting Spitzer from acting as an officer or a director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

//

//

VI.

Grant such other and further relief as this Court may deem just and proper.

Dated: June 16, 2003

Debra M. Patalkis (Lead Counsel)
Lawrence A. West
Daniel H. Rubenstein
Neil J. Welch, Jr.
Nancy E. McGinley
Cory C. Kirchert
John J. Field III
Attorneys for Plaintiff
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, DC 20549-0911
Telephone: (202) 942-7133 (Patalkis)
Facsimile: (202) 942-9581

Local Counsel:

Nicolas Morgan
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036-3648
Telephone: (323) 965-3877
Facsimile: (323) 965-3908

Debra M. Patalkis (Lead Counsel)
Lawrence A. West
Daniel H. Rubenstein
Neil J. Welch, Jr.
Nancy E. McGinley
Cory C. Kirchert
John J. Field III
Securities and Exchange Commission
450 Fifth Street, NW
Washington, D.C. 20549-0911
(202) 942-7133

Nicolas Morgan (Local Counsel) CA Bar No. 166441
Securities and Exchange Commission
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036-3648
(323) 965-3880

Attorneys for Plaintiff
Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHER DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>Plaintiff,<br>v.<br>STEPHEN S. SPITZER,<br>Defendant. | Case No. 03-CV-_____<br><br>**NOTICE OF RELATED CASE** |

Pursuant to Civil Local Rule 40.1(e) of the United States District Court for the Southern District of California, Plaintiff Securities and Exchange Commission (the "SEC") submits this Notice of Related Case. The complaint in this action, *SEC v. Stephen S. Spitzer, 03 CV* ___. was filed on June 16, 2003. This action is related to *United States v. Stephen S. Spitzer, 03 CR* ___, also filed on June 16, 2003, *SEC v. Matthew C. Gless, 03 CV0747* and *United States v. Matthew C. Gless*, 03 CR. 1090 which were filed on April 16, 2003, and *SEC v. Cappel, 02 CV 2310 JM (LSP)*, and *United States v. Cappel, 02 CR3104-W*, which were filed on November 22, 2002.

The *Gless* case and the criminal *Cappel* case were transferred to and are pending before the Honorable Jeffrey T. Miller, along with the civil *Cappel* case, pursuant to Civil Local Rule 40.1(h).

These six cases are related because they all arise out of essentially the same facts and involve similar courses of unlawful activities. Moreover, *United States v. Stephen S. Spitzer, 03CR____*, involves the same defendant. Defendant Spitzer and the *Gless* and *Cappel* defendants were employees of Peregrine Systems who, with others, engaged in the fraudulent schemes alleged in this Complaint.

Dated: June 16, 2003
Washington, D.C.

Respectfully submitted,

Debra Patalkis (Lead Counsel)
Lawrence A. West
Daniel H. Rubenstein
Neil J. Welch, Jr.
John Field III
Nancy E. McGinley
Cory C. Kirchert
Attorneys for Plaintiff
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, DC 20549-0911
Telephone:(202) 942-7133 (Patalkis)
Facsimile:(202) 942-9581

Local Counsel:

Nicolas Morgan
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036-3648
Telephone: (323) 965-3877
Facsimile: (323) 965-3908

**INSERT TO IV**

This is a securities enforcement action alleging (a) financial fraud under15 U.S.C. § 78(b) and 17 C.F.R. § 240.10b-5; (b) insider trading under 15 U.S.C. § 78(b), 17 C.F.R. § 240.10b-5 and 15 U.S.C. §77q(a); (c) aiding and abetting books and records, internal controls and reporting violations under 15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1, 15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a and 240.13a, and 15 U.S.C. § 78m(b)(2)(A) and § 78m(b)(2)B, and 15 U.S.C. § 78(b)f; and (d) misleading and issuer's auditors under 17 C.R.F. § 240.13b2-2.

BY FAX

ORIGINAL

JS44
(Rev 07/89)

FILED
03 JUN 16 AM 9:35
CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

# CIVIL COVER SHEET

sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

I (a) PLAINTIFFS
Securities and Exchange Commission

DEFENDANTS
Stephen S. Spitzer

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Orange County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Debra Patalkis, SEC, 450 Fifth St., NW, Washington, DC 20549-0911
(202) 942-7133

ATTORNEYS (IF KNOWN)
Dan Marmalefsky, Morrison & Foerster LLP;
555 West Fifth St., Suite 3500, Los Angeles, CA 90013-1024
(213) 892-5200

'03 CV 1178 IEG NLS

II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- [x] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

See Attachment

15:0078 (891)

V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment &Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153Recovery of Overpayment of Veterans Benefits
- [ ] 160 Stockholders Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Tort to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury- Medical Malpractice
- [ ] 365 Personal Injury - Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/Accommodations
- [ ] 444 Welfare
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence Habeas Corpus
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prisoner Conditions

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reappointment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 810 Selective Service
- [x] 850 Securities/Commodities Exchange
- [ ] 875 Customer Challenge 12 USC
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State
- [ ] 890 Other Statutory Actions

VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appelate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

VII. REQUESTED IN COMPLAINT: ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 DEMAND $ Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☒ NO

VIII. RELATED CASE(S) IF ANY (See Instructions): JUDGE Miller Docket Number *

DATE 6/16/03 SIGNATURE OF ATTORNEY OF RECORD [signature]
Debra Patalkis/Nicolai Morgan
02 CR 3104 (JTM); 03OR 1090 (JTM); 03 CV 747 (JTN); 02CV 2310 (JTM)

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

DP #150.00 6/16/03 #94835 VB